UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: __8 18 2014__

---

EDDIE BURNS,

                    Plaintiff,

    – against –

STEPHEN WETTIENSTEIN and THE CITY OF
NEW YORK,

                    Defendants.

---

**OPINION AND ORDER**

13 Civ. 6835 (ER)

Ramos, D.J.:

    Plaintiff Eddie Burns ("Burns" or the "Plaintiff"), proceeding *pro se* and *in forma*

*pauperis*, brings this action under 42 U.S.C. § 1983 against the City of New York (the "City")

and Stephen Wettienstein ("Wettienstein"), warden of the Otis Bantum Correctional Center

("OBCC") at Rikers Island in Queens, New York, (collectively, "Defendants").[1] *See generally*

Compl., Doc. 2.[2]  Plaintiff claims that he was injured by "black leach like worms" while cleaning

a shower area in the OBCC (the "Incident") and that Defendants denied him proper medical

treatment for his injury.  *Id.* The Court construes the Complaint to allege that Defendants

violated Plaintiff's Eighth Amendment rights by (1) exhibiting deliberate indifference to a

serious medical need and (2) subjecting him to unconstitutional conditions of confinement.

---

[1] On October 16, 2013, the Court dismissed two co-plaintiffs named by Burns and denied his request to treat this case as a class action proceeding.  The Court also dismissed Plaintiff's claims against the New York City Department of Corrections ("DOC") and directed the Clerk of the Court to amend the caption to replace the DOC with the City.  Doc. 7 at 3 ("Order of Service").  Additionally, although he is not listed in the case caption or on the docket sheet, the Complaint also appears to name a "Captain Lee" as a defendant.  Compl. 2 ¶ I(B).

[2] The Court notes that the pagination in the Complaint and Plaintiff's Opposition is haphazard.  Accordingly, the Court cites to the document and page numbers designated on the Court's electronic filing system (ECF/Pacer).

Defendants seek dismissal of the Complaint based on Plaintiff's failure to (1) exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e) (2012); (2) adequately allege unconstitutional conditions of confinement or deliberate indifference to a serious medical need, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) state a claim for municipal liability. *See* Defs.' Mem. 4, 7, 12, Doc. 19.

For the reasons set forth below, Defendants' motion is GRANTED and the Court dismisses the Complaint with prejudice.

## I.    FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the allegations in the Complaint, which the Court accepts as true for purposes of this motion. *See, e.g., Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).[3]

On August 16, 2013 at 8:00 p.m., while using the showers in 8 Upper Dormitory, Plaintiff observed "black leach like worms" on the shower walls and floor. Compl. 5. On August 29, 2013, Plaintiff and two inmates jointly assigned to house detail were instructed to clean the shower area, where Plaintiff again saw "black leach like worms." *Id.* at 2, 5; *see also* Pl.'s Opp. 15, Doc. 15. After cleaning the showers, Plaintiff noticed bite marks on his "left

---

[3] The Court deems the documents provided by Plaintiff in support of his Opposition incorporated by reference into his Complaint. It is well-established in this Circuit that "in [motion to dismiss] analysis not only [do we include] the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Courts can consider "documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *McNair v. Rivera*, No. 13 Civ. 0352 (ALC) (SN), 2013 WL 4779033, at *4 (Sept. 6, 2013) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting cases), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

2

shoulder, arm and the back of [his] neck … as well as [his] right leg." Compl. 5. Subsequently, he suffered "itching" and noticed "bumps on [his] body." *Id.* Because he scratched them, the irritated bumps eventually became sores. Pl.'s Opp. 10. Plaintiff appears to allege that Officers Owens, Johnson, and Cheeseman of the OBCC learned of the situation and Officer Owens alerted a supervisor to the presence of the "black leach like worms" in the showers. Compl. 5. Plaintiff also appears to allege that Captain Chalmers directed subordinate officers to send him to "sick call" that same day. *Id.* at 4. Yet, when Plaintiff arrived at the OBCC clinic, medical staff told him that he would not be seen due to a situation involving "S.R.G. Inmates[4] [sic] and other injuries." *Id.* at 4 ¶ 1.

That same day, Plaintiff filed a grievance through the Inmate Grievance and Request Program ("IGRP") (the "Grievance"), in which he solely complained about the presence of the "black leach like worms in the showers." Pl.'s Opp. 15, Ex. B.[5] The Grievance did not mention that he was not provided medical care at the OBCC, nor did it suggest that he had suffered any injuries. *Id.*

On September 2, 2013, Plaintiff was again authorized to visit sick call, this time by Officer Little. Upon arrival, medical center staff again told him that he would not be seen due to other injured and newly admitted patients. Compl. 4 ¶ 2. During his third attempt on September 3, 2013, Plaintiff was admitted to sick call, and the doctor who examined him characterized his injury as a rash. Plaintiff insisted that bites from "leach like worms" caused his injury, to which

---

[4] Presumably, "S.R.G." signifies "Security Risk Group" inmates. *See, e.g., Walker v. City of New York,* No. 11 Civ. 9611 (PKC) (JLC), 2012 WL 3037308, at *1 (S.D.N.Y. July 25, 2012) (describing "SRG" status).

[5] In his Opposition to Defendants' Motion, Plaintiff submitted additional documentation concerning his Grievance, including an inmate interview grievance slip for the OBCC IGRP dated August 29, 2013, with a file stamp dated September 3, 2013, which complains of "over 100 black living worms" coming out of the showers.

the doctor replied "okay." *Id.* at 4 ¶ 3.  The doctor gave Plaintiff an ointment called Fluocinonide and instructed him to apply it to the affected area. *Id.* at 5.

On September 5, two days after he was treated at the medical facility, Plaintiff filed the instant Complaint.  As the Complaint acknowledges, at that time, he had still not yet received a response to the Grievance from the IGRP staff, which had five days from the day the Grievance was submitted to respond with an informal resolution.[6]  IGRP Procedures § IV(G)(1).  In the Complaint, Plaintiff claims that he had been "itching ever since" his contact with the "leach like worms" and that the treatment he received two days earlier had not successfully eliminated his condition.  Compl. 5.  Though it is difficult to discern the precise contours of Plaintiff's allegations, construing the Complaint liberally, pursuant to *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), Plaintiff appears to assert claims under 42 U.S.C. § 1983 for (1) deliberate indifference to his serious medical needs and (2) unconstitutional conditions of confinement, in violation of his Eighth Amendment rights.  Plaintiff seeks five million dollars for the mental and physical injuries that he suffered, including phobias that he claims were induced by the Incident. Compl. 7.  He also seeks to close the shower facility. *Id.*

Plaintiff checked "yes" to certain standard questions on the form commonly used by incarcerated litigants for filing a *pro se* complaint, including those inquiring (1) whether the correctional facility where his claim arose had a grievance procedure and (2) whether he had filed a grievance. Compl. 6.  He described the subject of his grievance as "black leach like worms in the showers." *Id.*  However, he responded "[d]o not know" to the question of whether

---

[6] In their briefing, Defendants cite to the Department of Correction's "well-established, multi-step grievance procedure," the New York City Department of Correction Directive 3376, *available at* http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf (last visited Aug. 4, 2014) (hereinafter, the "IGRP Procedures").

4

a grievance procedure at his correctional facility covered some or all of his claims. *Id.*  In the section of the Complaint addressing whether Plaintiff took any steps to appeal the Grievance through the prison's grievance process, he stated "waiting to hear from grievance staff to further the complaint." *Id.* at 6.  In the section of the Complaint titled "additional information that is relevant" to exhaustion, Plaintiff only states that he notified Deputy Johnson[7] and Captain Lee of the "problem and issues." *Id.* at 7.

Based on additional documentation provided by Plaintiff, it appears that the DOC staff responded to the Grievance on September 16, 2013 by completing a disposition form (the "Disposition Form"). Pl.'s Opp. 17, Ex. C.  The Disposition Form, which a "grievance supervisor" signed, proposed that the facility request an exterminator to treat the shower area. Notably, the Disposition Form also bears Plaintiff's signature, dated September 30, 2013. *Id.*

On November 9, 2013, Plaintiff sent a personal injury claim form addressed to the New York City Comptroller, John C. Liu, stating that he had been bitten by worms at OBCC.  On December 5, 2013, in response to a letter that Mr. Liu had allegedly sent him, Plaintiff sent a letter back to Mr. Liu, arguing that he timely notified him of "[his] injury." Pl.'s Opp. 12-13, Ex. 1.  At some point prior to December 29, 2013, Plaintiff was transferred from OBCC to another prison. *Id.* at 14.  After his transfer to a different facility, Plaintiff requested information from prison staff about his Grievance (the "IGRP Statement Form"). *Id.*

## I.     LEGAL STANDARD

A court deciding a motion under Rule 12(b)(6) must "accept all factual allegations in the complaint as true and draw all reasonable inferences" in the plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  In cases brought by *pro se* plaintiffs, courts must

---

[7] Captain Chalmers, Deputy Johnson, Officer Little, Officer Cheeseman, Officer Owens have not been sued herein.

further construe the complaint to raise the strongest claims that it suggests. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)). The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims. *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002). Yet, a complaint must do more than offer "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Indeed, even in *pro se* cases, "threadbare recitals of elements of a cause of action" fail to adequately state a claim. *Parris v. N.Y. Dep't Corr. Svcs.*, 947 F. Supp. 2d 354, 361 (S.D.N.Y. 2013) (citing *Chavis*, 618 F.3d at 170).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Unless allegations have "nudged claims" from conceivable to plausible, the complaint must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

## II.   MUNICIPAL LIABILITY

The Court notes at the outset that Plaintiff has failed to adequately allege municipal liability and personal involvement of Defendant Wettienstein or Captain Lee[8] in the alleged constitutional violations. *See* Defs.' Mem. 2 n.1, 11 (personal involvement); *id.* at 12-13 (municipal liability). This alone provides sufficient grounds for dismissal of all of Plaintiff's claims. Accordingly, Defendants' motion to dismiss is GRANTED in its entirety.

---

[8] Defendants have requested that the Court extend any relief granted to include Captain Lee, given that Plaintiff lists him as a potential defendant in the Complaint. Defs.' Mem. 2 n.1; Compl. 2 ¶ I(B).

Plaintiff does not allege any facts suggesting that the City had a policy, rule or widespread practice of promoting or accepting delays in medical treatment, obstructing access to medical treatment, providing subpar medical care, improperly training personnel, or creating unsanitary conditions in prisons. Defs.' Mem. 12-13 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)); *see also, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 400, 398 (1997); *Johnson v. City of New York*, No. 06 Civ. 09426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011). Nor does Plaintiff allege that Warden Wettenstein (or any other individual) had "final policymaking authority" over actions of medical or prison staff who could have violated his rights. Defs.' Mem. 13 (citing *Montgomery v. City of New York*, No. 09 Civ. 06145 (RJH), 2011 WL 1770849, at *2-*3 (S.D.N.Y. May 9, 2011)); *see also City of St. Louis v. Praprontnik*, 485 U.S. 112, 123 (1988) (plurality opinion). Plaintiff thus fails to state a § 1983 claim against the City.

Likewise, Plaintiff's scant allegations against Warden Wettienstein and Captain Lee fail to state a claim. It is well-settled that to survive a motion to dismiss, a § 1983 claim must indicate that the defendant "was personally involved in a constitutional deprivation" of the plaintiff's rights. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Plaintiff does not attribute any actions to Wettienstein in his Complaint, let alone allege that he failed to act, respond to any sort of appeal from Plaintiff, created a custom or policy, or failed to train and supervise others. *Rolon v. Ward*, 345 F. App'x 608, 611 (2d Cir. 2009) (summary order); *see also Manley v. Mazzuca*, No. 01 Civ. 5178 (KMK), 2007 WL 162476, at *11 (S.D.N.Y. Jan. 19, 2007). In his Opposition, Plaintiff's only argument mentioning Wettienstein states, "Check the C.O.'s and maintenance log books. DFDT [sic] Wettienstein have [sic] actual and constructive knowledge." Pl.'s Opp. 3. Even if the Court incorporated such an allegation into the Complaint,

it still fails to adequately allege personal involvement. *Rivera v. Bloomberg*, No. 11 Civ. 629 (PGG), 2012 WL 3655830, at *8-*10 (S.D.N.Y. Aug. 27, 2012) (dismissing claims against Mayor Bloomberg and Executive Director of Board of Correction due to *pro se* plaintiffs' failure to allege their direct participation in the violation); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *Rosario v. Fischer*, No. 11 Civ. 4617 (JPO) (FM), 2012 WL 4044901, at *5 (S.D.N.Y. Aug. 28, 2012) ("[M]erely pleading that a defendant is a high-ranking prison official plainly is insufficient to establish personal involvement.").

Similarly, Plaintiff's one-line reference to Captain Lee in the Complaint suggests nothing more than that he was notified about the worms in the showers after the Incident. Compl. 7 ("I address[ed] … Capt[ain] Lee on the problem and issues."). Yet, "[a]fter the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation," *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009), and the Complaint lacks any allegations "indicating how [Captain Lee] violated the law or injured the plaintiff," *Moor v. Fischer*, No. 10 Civ. 4038 (PKC), 2011 WL 2988527, at *2 (S.D.N.Y. July 22, 2011) (internal quotations omitted) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims due to his failure to adequately allege municipal liability or personal involvement by the Defendants.

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1983

Even if Plaintiff had adequately alleged municipal liability and personal involvement, his claims would still require dismissal due to his failure to adequately allege that any of his constitutional rights have been violated. "To state a claim under § 1983, a plaintiff must allege

8

the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir. 2007); *Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *16 (S.D.N.Y. Mar. 26, 2013). The Eighth Amendment prohibits cruel and unusual punishment imposed on those convicted of crimes, including "unnecessary and wanton infliction of pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d. Cir. 1994) (citing *Gregg v. Georgia*, 42 U.S. 153, 173 (1976)).

While prison officials are responsible for the safety of prison inmates, not every injury suffered by a prisoner "translates into constitutional liability." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Rather, prison officials only violate the Eighth Amendment when two conditions are satisfied: (1) the prisoner must have in fact been denied adequate medical care, and the alleged deprivation must, objectively speaking, be "sufficiently serious" (the objective element); and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind" (the subjective element). *Id.* (citations and internal quotation marks omitted). In the prison setting, "courts have defined this culpability as 'deliberate indifference' to the health and safety of inmates." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. May 30, 2013) (citing *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 302–04 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The objective analysis of the seriousness of the conduct in question requires an examination of the alleged unconstitutional conditions. Although the Constitution does not mandate a comfortable prison setting, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prisoners are entitled to "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (quotations omitted)). Thus, a prisoner "must prove that the conditions of his confinement violate contemporary standards of decency"

to show that the condition is sufficiently serious. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *see also Estelle*, 429 U.S. at 106.

To satisfy the subjective element, which evaluates the accused prison official's subjective intent, the plaintiff must allege facts suggesting "something more than mere negligence." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (quotations omitted). An injured prisoner cannot recover under the Eighth Amendment unless he can show that a prison official "purposeful[ly] subject[ed]" him to a "substantial risk of serious harm" or acted with "deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d. Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). An official exhibits deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco*, 222 F.3d at 107 (citations and internal quotation marks omitted).

Prisoners generally assert Eighth Amendment claims under three basic theories: (1) unconstitutional conditions of confinement unrelated to medical treatment; (2) denial of proper medical care; and (3) failure to protect against harm by other inmates. *See Randle*, 960 F. Supp. 2d at 470. Here, Plaintiff asserts claims under the first and second theories.

### 1) Conditions of Confinement

Accepting as true the allegations that Plaintiff was exposed to a shower area containing 100 "leach like worms," that he suffered bites and an itchy rash, and that he did not receive medical treatment for five days, such facts do not give rise to an inference that the conditions at OBCC exceeded the bounds of minimal discomfort. *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996) (the alleged deprivation must be "sufficiently serious" such that it "den[ies] the minimal civilized measure of life's necessities.") (internal citations omitted). Plaintiff only

alleges limited exposure to the worms.  Presence of, and exposure to, vermin in a prisoner's housing area "does not constitute 'punishment' under the Eighth Amendment." *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (citing *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 174 (S.D.N.Y. 2001)).

Nor is there any allegation or indication that members of the prison staff were aware of the conditions in the showers *prior* to the Incident. *Shepherd v. Powers*, No. 11 Civ. 6860 (LTS) (RLE), 2012 WL 4477241, at *7 (S.D.N.Y. Sept. 27, 2012) (citing *Seiter*, 501 U.S. at 304) (finding odors and mold, combined with severely cold temperatures and no blankets, might satisfy objective deliberate indifference test if inmate had alerted prison staff to condition or could prove staff *knew* of it); *cf. Hayes v. N.Y.S. D.O.C. Officers*, No. 97 Civ. 7383 (MBM), 1998 WL 901730, at *8 (S.D.N.Y. Dec. 28, 1998) (dismissing *pro se* complaint for failure to state a claim where prisoner complained of eye pain but staff unaware of substantial risk of harm, and, in any event, deeming evidence alleged "insufficient to establish that [the defendant] should have drawn an inference that a substantial risk of serious harm existed, let alone that she actually drew that inference").  Quite the opposite, here, Plaintiff's allegations and documents reveal that after the Incident, prison staff sent him to the medical clinic at the facility multiple times and responded to his Grievance by contacting an exterminator.  Accordingly, Burns fails to state a § 1983 claim for unconstitutional conditions of confinement.

### 2) Deliberate Indifference to A Serious Medical Need; Denial of Medical Care

Construing his allegations liberally, Plaintiff claims that the delay between August 29, 2013, the date on which the worms bit him, and September 3, 2013, the date on which prison medical staff treated him, constitutes a denial of medical care or deliberate indifference to a serious medical need.  The Complaint appears to allege that the prison medical staff made a

11

determination that Plaintiff's condition was not serious enough to necessitate immediate attention.  Compl. 4; *see also* Pl.'s Opp. 16.  Plaintiff also appears to claim that the ointment he ultimately received failed to eliminate his itching symptoms.

To state a claim for unconstitutional denial of medical care, prisoners must show that prison employees were "deliberate[ly] indifferen[t] to their serious medical needs."  *See Wright v. Dee*, 54 F. Supp. 2d 199, 204-206 (S.D.N.Y. 1999).  The plaintiff must show that he was actually denied medical care, as well as that the inadequacy of medical care was "sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  A claim might lie where a plaintiff alleges conditions of urgency "that may produce death, degeneration, or extreme pain."  *Hathaway*, 37 F.3d at 66; *Nelson v. Rodas*, No. 01 Civ. 7887 (RCC) (AJP), 2002 WL 31075804, at * 14 (S.D.N.Y. Sept. 17, 2002) (quoting *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002)) (same); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (finding that Eighth Amendment requires prompt treatment of a medical condition if failure to do so could result in significant injury).  Courts look to "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted).  The Second Circuit has defined a serious deprivation as "one of medical necessity" and not "simply of desirability."  *Dean v. Coughlin*, 804 F.2d 207, 215 (1986) (citations omitted).

In evaluating whether the medical care provided, or lack thereof, satisfies the deliberate indifference test, courts must distinguish between whether a complaint relates to a failure to provide *any* medical care or treatment, or if the complaint relates to a delay in the provision of

care or the inadequacy of the care provided. *Salahuddin*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d. Cir. 2003)). Where a complaint relates to an utter lack of medical care, courts look to whether the plaintiff's medical condition is itself sufficiently serious. *Id.* However, for complaints about insufficient treatment or a delay in treatment, courts focus on the "risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition" and the consequences of any alleged failure to provide adequate medical care. *Carpenter*, 316 F.3d at 186. Any consequences that are merely "minor and inconsequential" cannot withstand an Eighth Amendment deliberate indifference claim, even if the plaintiff does in fact suffer from a "serious" condition. *Id.*

Here, Plaintiff's allegations of itching and bumps resulting from worm bites, and even sores caused by Plaintiff's own itching, fail to establish that he suffered any serious injury. *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."). Moreover, Plaintiff's allegations fail to establish that the delay—or the denial of medical care over several days—was "sufficiently serious" such that it posed a severe risk of harm to him. Indeed, Plaintiff's descriptions of his symptoms are less serious than others rejected by courts in this district concerning similar injuries. In *Liner v. Fischer*, for example, the *pro se* plaintiff's claimed injuries included a skin condition of "itchy-erratic dryness" that required "lotion," as well as foot pain, soreness, and itching which, untreated, "turn[ed] into cuts"; the court determined that such alleged conditions "fall well short of a serious medical need for the purposes of [an] Eighth Amendment claim" because, "at their worst," they "are not of such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard." No. 11 Civ. 6711 (PAC) (JLC), 2013 WL 4405539, at *20 (S.D.N.Y. Aug. 7, 2013) (granting Rule 12(b)(6)

13

motion to dismiss); *see also, e.g.*, *Hayes*, 1998 WL 901730, at \*8-\*9 (deeming insufficient

plaintiff's allegations that his "eye was in pain, tearing, and [his] vision was becoming worse,"

given his failure to "allege that his condition significantly affected his daily activities, or that he

experienced 'chronic and substantial pain.'" (internal citation omitted)); *Swindell v. Supple*, No.

02 Civ. 3182 (RWS), 2005 WL 267725, at \*7 (S.D.N.Y. Feb. 3, 2005) (dismissing *pro se*

plaintiff's deliberate indifference claim at summary judgment because, as a matter of law,

condition that caused "excessive itching, scratching, soreness from scratching, and cracked skin,

appearing as 'small paper-cut like lacerations' on [plaintiff's] legs" was an insufficiently serious

medical need).

   Plaintiff's allegations and descriptions of his symptoms do not suggest anything more

than a minor or inconsequential discomfort.   While Plaintiff claims that his skin was still itching

at the time he filed the Complaint, he had been prescribed the ointment by the health clinic only

two days prior.  Compl. 5.  There is no indication that the delay in treatment resulted in a

significant worsening of his condition, nor does Plaintiff assert "that he experienced any

permanent damage due to lack of treatment." *Hayes*, 1998 WL 901730, at \*9.

   Even if Plaintiff's condition was appropriately serious for Eighth Amendment purposes,

he has also failed to allege that the prison officials had a subjectively "culpable state of mind,"

*Hathaway*, 37 F.3d at 66, or that the deprivation was more than just "lack of due care" or

malpractice. *LaBounty v. Coughlin*, 137 F.3d 68, 72-73.  As in *Prince v. Latunji*, 746 F. Supp.

2d 491, 496 (S.D.N.Y. 2010), Plaintiff's allegations at very most suggest negligence.  The

plaintiff in *Prince* alleged that he was denied follow-up treatment for a broken pinky finger for

approximately two weeks and was not provided with pain management after his initial visit; the

court found that such allegations did "not state a valid claim of medical mistreatment." *Id.*  So

too here, Plaintiff fails to present any facts indicating that the prison staff exhibited a state of mind equivalent to criminal recklessness, that they were aware that a substantial risk of serious harm was likely to result from a five-day delay in treatment for worm bites, or that the treatment he eventually received from the clinic would be inadequate in any way.

## IV.   DISMISSAL WITH PREJUDICE

"[W]hen a liberal reading of the [*pro se* plaintiff's] complaint gives any indication that a valid claim might be stated," it may be appropriate for the court to "grant[] leave to amend at least once." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, when "the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing *Moorish Sci. Temple v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982))—that is, "based on an indisputably meritless legal theory," *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (quotation omitted)—a court may properly dismiss the case without leave to amend. Even if Plaintiff amended his Complaint to include allegations of municipal liability or personal involvement, the nature of his injury fails to rise to the level of a constitutional deprivation. As the legal theory underlying his claims wholly lacks merit, dismissal of Plaintiff's claims with prejudice is warranted. *Prince*, 746 F. Supp. 2d at 495-96 (dismissing *pro se* plaintiff's deliberate indifference claims with prejudice where allegations merely included negligence); *see also, e.g.*, *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ 5322 (KPF), 2014 WL 1778410, at *8 (S.D.N.Y. Apr. 25, 2014) (dismissing *pro se* plaintiff's complaint with prejudice where his "allegations establish[ed] that Defendants responded expeditiously and appropriately to his MRSA infection; additional allegations would not change this fact.").

15

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 10, to mail a copy of this Opinion and Order to Plaintiff, and to close this case.[9]

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


It is SO ORDERED.

Dated:      August 18, 2014
            New York, New York

                                              _____
                                              Edgardo Ramos, U.S.D.J.

---

[9] Failure to exhaust is an affirmative defense to be raised and proven by the defendants, and not a jurisdictional predicate. *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam); *Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003) (per curiam).  The Court notes that, while it is clear from the face of the Complaint that Plaintiff did not exhaust administrative remedies, most notably because he concedes that he failed to file an appeal prior to initiating the instant suit, the record lacks sufficient information concerning whether administrative remedies were in fact available to Plaintiff.  Accordingly, Defendants have failed to prove the affirmative defense of exhaustion at this juncture. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004); *Washington*, 2014 WL 1778410, at *3-*4.  In light of the inadequacy of Plaintiff's pleadings, however, the Complaint nonetheless merits dismissal.